No. 25,466.

HANNAH COLSON, *Appellee,* v. ANNA CARLSON and ELLEN
LINDSTROM, *Appellants.*

### SYLLABUS BY THE COURT.

INHERITANCE—*Descents and Distributions—An Alien Subject of Sweden May
Inherit Real Estate from His American Kindred—Bar of Alienage to Inherit
Real Estate Removed by Treaty.* Under the treaty between the United
States and Sweden proclaimed March 20, 1911, the bar of alienage to the
inheritance of real estate by their respective nationals was removed, so that
subjects of the king of Sweden do now inherit real estate from their Ameri-
can kindred and *vice versa,* without regard to alienage, limited only by the
requirement that such alien heirs shall sell their inheritance and withdraw
the proceeds thereof within three years or in such further time as their
circumstances may justify or require.

Appeal from Jewell district court; WILLIAM R. MITCHELL, judge. Opinion
filed July 5, 1924. Reversed.

*J. R. White,* of Mankato, for the appellants.
*A. Teeple,* of Mankato, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This was an action in partition between next of
kin to the late John Colson, of Jewell county, a naturalized citizen
of the United States, of Swedish birth, who died intestate, single and
without issue, on February 21, 1923.   Colson had two sisters,
Hannah and Lottie, who came to this country and became natu-
ralized citizens.   Lottie is dead, but is survived by heirs who are
all American citizens.   John also had one brother, C. A. Carlson,
who lived and died a subject of the king of Sweden, leaving two
daughters, Anna and Ellen, the appellants, who are likewise Swedish
subjects.

The practical question in this lawsuit is whether the real estate of
John shall be divided into two principal parts, one to Hannah and the
other to the heirs of Lottie; or whether it should be divided into
three such parts, giving one-third to the Swedish daughters of the
deceased alien brother.

The trial court, doubtless largely influenced by our decision in
*Johnson v. Olson,* 92 Kan. 819, 142 Pac. 256, gave judgment in parti-

tion for the benefit of Hannah and the heirs of Lottie, and wholly excluded the Swedish kinswomen because of the bar of alienage.

The Swedish litigants appeal. Their counsel urge two main points on our attention—that the decision in *Johnson v. Olson* should be overruled, and that since the cause of action arose in *Johnson v. Olson* a treaty has been concluded and proclaimed between the United States and Sweden which removes the bar of alienage from the Swedish kinswomen.

Touching these points in order: The court is altogether satisfied with the reasoning, conclusions and judgment in *Johnson v. Olson,* and it will not be disturbed.

There is, however, much merit in appellants' second point. The cause of action in *Johnson v. Olson* arose at the death of Olaf Olson on January 3, 1911. The rights of those claiming under him were crystallized as of that date. The fact that the litigation growing out of rival claims to Olaf's estate was not concluded until July, 1914, or later did not alter or enlarge the inheritable rights of the claimants. Here, however, we have to take into consideration the fact that on March 20, 1911, twelve years before the death of John Colson, a treaty was concluded and proclaimed between the United States and Sweden, which, among other matters covering the rights, duties and powers of consular officials, and the reciprocal rights of Swedish and American citizens to personal property devolving on them by will or intestacy, contained the following:

"As for the case of real estate, the citizens and subjects of the two contracting parties shall be treated on the footing of the most-favored nation." (Art. XIV, Consular Convention with Sweden, proclaimed March 20, 1911, 37 U. S. Stat. at L. 1479, 1488; Senate Document No. 1063, 62d Cong., 3d session, vol. 3, pp. 112, 117.)

This sort of stipulation in treaties between nations is a characteristic method of saying a great deal in a very few words. It means simply that the reciprocal rights of Swedes and Americans to real estate by devise or inheritance in the dominions of the two governments shall be as potent and advantageous as those of alien nationals most favored by the United States in any treaty it may have with a foreign power where that particular subject matter has been set down in detail. It may also mean, of course, that the reciprocal rights of Swedes and Americans to real estate by devise or inheritance shall be as potent and advantageous in the dominions of each as those of alien nationals most favored by Sweden in any

treaty it may have with any foreign power where that particular
subject matter has been set down in detail.

It would appear that the treaty between the United States and
Great Britain proclaimed August 6, 1900, accords the most favor-
able treatment to the citizens and subjects of the contracting powers.
That treaty contains a provision which virtually removes the bar
of alienage to inheritance of real estate, the only qualification being
that the alien heir shall sell the property and withdraw the proceeds
within three years, which term may be lengthened under certain
circumstances. The pertinent provision reads:

"Where, on the death of any person holding real property (or property not
personal), within the territories of one of the contracting parties, such real
property would, by the laws of the land, pass to a citizen or subject of the
other, were he not disqualified by the laws of the country where such real
property is situated, such citizen or subject shall be allowed a term of three
years in which to sell the same, this term to be reasonably prolonged if cir-
cumstances render it necessary, and to withdraw the proceeds thereof, without
restraint or interference, and exempt from any succession, probate or ad-
ministrative duties or charges other than those which may be imposed in
like cases upon the citizens or subjects of the country from which such pro-
ceeds may be drawn." (Art. 1, Convention with Great Britain, proclaimed
August 6, 1900, 31 U. S. Stat. at L. 1929; Senate Doc. No. 357, 61st cong., 2d
session, compiled [1910] by William M. Malloy, vol. 1, p. 774.)

It therefore appears that the solution of the present question is
too plain for much discussion. Counsel for appellee suggests that
the treaty with Sweden of 1911 was a *consular convention*. True,
but that point is without significance. The term "convention" is
about as common as the word "treaty" when used to designate those
solemn and dignified compacts between governments which have the
sanction of law when duly ratified and proclaimed. Webster's New
International Dictionary defines such convention thus:

"Internat. Law. An agreement between states or sovereigns; as a treaty,
or, more usually, one less formal or more specific than a treaty, by which
several states arrange for the regulation of matters affecting all, as postage.
copyright, the conduct of war, etc.; also, a compact between commanders
of armies in respect to military operations, as the suspension of hostilities,
etc."

It is also urged that this Swedish convention only professed the
purpose of dealing with the rights, powers and duties of consular
officials. But no small part of the concerns of such officials pertains
to the protection of the property rights of their nationals. In this
Swedish treaty the personal estates of deceased nationals are made

the official concern of consular officials. But we shall not undertake the unfamiliar and technical task of elaborating on the functions of consular officials. These would necessarily include whatever was so declared by statute or treaty. But while official dominion over personal property of a decedent usually devolves in the first instance on some public officer, real estate ordinarily goes directly to the decedent's heirs. And the law can make anybody an heir, and a treaty can remove the bar of alienage against an heir. So it would seen that a treaty stipulation removing or limiting the effect of the bar of alienage to the inheritance of real estate was very obviously a proper subject for agreement in a consular convention between the two governments. And in this connection it ought to be remarked that it is only in a few of our American state constitutions that a rule exists requiring that the subject matter of a bill having the potency of law must be expressed in its title and that the instrument shall deal with one subject only. There is no such rule governing acts of congress, acts of parliament, or treaties with foreign powers. In these consequential documents the most diverse and miscellaneous matters not only may be, but frequently are, jumbled together without any attempt at logical order of treatment. In our acts of congress, material changes in substantive law, enlargements of the crimes act and the like, are frequently interpolated in a mere appropriation act or in any act for any other irrelevant purpose. The rule as to all matters covered in treaties, protocols and international conventions is that they are to be construed with great liberality so as to avoid the possibility of offense to a foreign government which has demonstrated its good will for our country and countrymen by making a compact with our government. (*Johnson v. Olson,* supra, and cases cited therein.) It would be bad judicial manners, indeed, to quibble about the form, title or context of the compact between the United States and Sweden so as to defeat the otherwise plain and obvious meaning of words so simple as these:

"As for the case of real estate, the citizens and subjects of the two contracting parties shall be treated on the footing of the most-favored nation."

That distinguished jurist, Charles Evans Hughes, secretary of state, whose department has special concern with our treaty relations with foreign governments, gave a helpful and tactful suggestion as to the proper determination of the pending question.

Colson v. Carlson.

He wrote a letter on the subject which was offered in evidence without objection. It reads:

Defendants Anna Carlson's and Ellen Lindstrom's Exhibit "1":

"DEPARTMENT OF STATE,
"WASHINGTON, August 21, 1923.

*"The Honorable Hays B. White, House of Representatives:*

"SIR—The department has received your letter of August 7, 1923, in which you express a desire to obtain a copy of any treaty in force between the United States and Sweden dealing with the right of subjects of Sweden to inherit real or personal property from American citizens.

"While observing that the interpretation of treaties pertains to the judicial as well as the administrative department of the government, the department invites your attention to the last two paragraphs of article 14 of the consular convention between the United States and Sweden concluded June 1, 1910, a copy of which is enclosed.

"In connection with the last paragraph of article 14 of the convention, which contains the most-favored nation clause as to real property, you may desire to examine the various treaties concluded between this government and other countries. Your particular attention, however, may be invited to the convention concluded March 2, 1899, between the United States and Great Britain, relating to the tenure and disposition of real and personal property. A copy of this convention is also enclosed.

"The treaties and conventions of the United States, besides being printed in the volumes of the United States Statutes at Large, may be conveniently consulted in a compilation entitled, 'Treaties, Conventions, International Acts, Protocols and Agreements Between the United States and other Powers,' in three volumes, 1776-1913, published by the government printing office, a copy of which doubtless can be obtained in most large public libraries. For treaties and conventions concluded after the compilation of the third volume of this publication, it is necessary to consult the volumes of the Statutes at Large.

"I have the honor to be, sir,

"Your obedient servant,    CHARLES E. HUGHES."

"Enclosures:

"(1) Consular Convention between the United States and Sweden, June 1, 1910. [Proclaimed March 20, 1911.]

"(2) Convention between the United States and Great Britain, March 2, 1899. [Proclaimed August 6, 1900.]"

It seems quite clear that the Swedish treaty read in the light of the British treaty, as quoted above, removes the bar of alienage against the Swedish heirs, and they are entitled to inherit along with their American kindred, *per stirpes,* the real estate of John Colson, intestate.

Reversed.